## JOHN E. FEHLESON, *et al., vs.* THE AMERICAN SCHOONER A. J. WEST.

### December 11, 1908.

*Discharge of seamen:*   Refusal by the crew, without justification, to obey lawful orders of a ship's officers, is sufficient reason for their discharge.

*Lawful order under shipping articles:*   An order by a ship's officers commanding the crew to raise the anchor by means of the capstan, in connection with docking the vessel, when there was no steam for the donkey engine, is a lawful order under shipping articles whereby the crew have agreed "to be obedient to the lawful commands.   *   *   *   of their superior officers in everything relating to the vessel."

*Same:*   An order to the crew from the ship's officers, on reaching

port, to put the sail covers on the reefed sails, is also a lawful order under such shipping articles.

*Seamen refusing duty—Wages:*    Seamen refusing duty and thereafter discharged are not entitled to pay for the time during which they refuse duty.

*In Admiralty:*    Libel *in rem* for seamen's wages and for damages for breach of contract.

*Geo. A. Davis,* Proctor for Libelants.

*Holmes & Stanley* and *R. W. Breckons,* Proctors for Libellee.

DOLE, J.    This is a libel *in rem* for seamen's wages and for damages for breach of contract and for return passage money. The libelants allege that they were discharged upon arrival in Honolulu without cause and in violation of their shipping articles, and pray judgment for wages to the amount of $45.45 apiece; also $75.00 each for passage money back to Gray's Harbor in the State of Washington, and $100.00 each for their suitable maintenance until they shall arrive at such port.

Charles Yarnberg, master and bailee of the said schooner, intervening in behalf of the owner, admits the engagement of the libelants and admits that wages to the amount of $44.00 apiece are due them, and alleges that on the 30th day of March he discharged them from the service of the said schooner, and denies that such discharge was in violation of the shipping articles; and further alleges that during the voyage from Gray's Harbor they acted in a sullen, disrespectful and disobedient manner, and frequently obeyed orders with apparent reluctance, and upon the arrival of the schooner at Honolulu on the 29th of March, it became necessary in the docking of the said schooner to heave up the anchor and that thereupon they all refused to obey and insisted that the anchor should be raised by means of steam, and that he was thereupon compelled to get up steam, which required from an hour to an hour and a half; and that in order to protect the sails of the schooner from dampness, he ordered the libelants to put the sail covers

on the sails, to which order the libelants refused obedience unless he would pay them extra wages at the rate of fifty cents an hour; whereupon he discharged them as aforesaid; and that thereafter and on the next day, March 30th, he presented his shipping articles and log book to the United States shipping commissioner requesting an investigation and that such commissioner investigated the circumstances and advised him that he was entitled to discharge the libelants from the service of the vessel for disobedience to lawful orders, and that thereupon he deposited with the shipping commissioner the amount determined by the commissioner to be due to the said libelants as aforesaid.

It appeared upon the trial of the case that the allegations of the answer in regard to the refusal of the libelants to raise the anchor and to put covers on the sails, were fully sustained by the evidence. Some effort was made by the libelants to show that it was the custom of the port of Honolulu to pay for such services as putting covers on the sails as extra work, or as extra time, it being Sunday, which contention was not proved.

A copy of the shipping articles was filed in court showing that wages were to be paid libelants at $40.00 a month. No reason was given why the order to cover the sails should not have been obeyed. It was shown that such covering was usual and necessary to protect the sails upon being furled from dampness and mildew. I find that the order was a reasonable and lawful one and within the shipping articles, which required the crew among other things to be obedient to the lawful commands of the master in everything relating to the vessel. The failure of libelants to respond to the order to raise the anchor was a similar case of disobedience to a reasonable and lawful order and was without justification whatever so far as appears. A reasonable degree of discipline on board a ship is essential to its successful management.

There is some uncertainty as to the date when the discharge took place. The log recites that these libelants were dismissed

from the ship for refusal of duty at 10 a. m. March 29th; the answer alleges that on the 29th of March the master discharged them on the ground that they had not carried out their contract as evidenced by the shipping articles; "that thereafter and on March 30, 1908, he presented the shipping articles, and his log book, to the Honorable H. N. Almy, United States shipping commissioner at the port of Honolulu, and requested the said shipping commissioner to make an investigation into the matter, and ascertain whether or not he, the said master, had the right, under the circumstances, to discharge the men." That upon investigation the commissioner advised him that he was entitled to discharge the libelants for disobedience of lawful orders; and that upon receiving such advice he deposited with the shipping commissioner the amount determined by the said shipping commissioner to be due the said libelants, to-wit, $44.00, to the credit of each of the said libelants.

Section 4508 of the Revised Statutes provides that it shall be the duty of the shipping commissioner to superintend the engagement and discharge of seamen in manner prescribed by law. Under this provision it would appear that the action of the master on the 29th of March was merely tentative and subject to the action of the shipping commissioner which took place on the 30th of March. I therefore find that libelants were discharged on the 30th of March. It appears from the evidence that the libelants remained on board until the 30th and were ordered to leave the ship by noon. The claim of the libelants for $45.45 instead of $44.00 allowed by the shipping commissioner would appear to represent the extra day after the 29th. I think that under the circumstances the discharge was really on the 30th of March, but that the libelants are not entitled to the $1.33 in addition to the $44.00 allowed by the shipping commissioner, because of the provision of section 4528 of the Revised Statutes denying wages to seamen for any period during which they unlawfully refuse or neglect to work when required. *The Jefferson Borden,* 6 Fed. Rep. 301, 303.

The libelants alleged in their libel that they were destitute and unable to advance or secure costs, and they were allowed to bring their proceedings without costs.

The libel is dismissed; the claimant to pay his own costs.